May it please the court. My name is Jim Miller and I represent the appellant who is a disability claimant and her name is pronounced Kanawyer. Kanawyer. Kanawyer, like Kanawyer v. Neff, but Kanawyer. Yes, exactly. Very different spellings. And we're asking you simply to remand this case for full consideration of all the evidence that's in the record. In particular, there are two pieces of evidence that were not considered by the administrative law judge. One was the evidence of fusion surgery on her low back, which occurred after the AOJ's decision, about a year after. It was added to the record and was before the appeals council. But because of that situation, the AOJ did not know that her back pain was addressed by this invasive surgery. So he could not take that into account when evaluating her pain. Also, the AOJ did not see the surgery records and could not have known about the timeline that was involved, starting in 1987, when she first injured her low back and had back surgery, and then had this other surgery, this latest surgery in 2000. So the AOJ's analysis of the medical history was contrary. The first point, or it sounds like the first point and the second point are the same point. It's sort of the same. It's just that the timeline for the AOJ didn't come to a point of resolution. At the time he made his decision, the medical treatment of the back pain had not ended. It was still going on and supposedly or hopefully ended or resolved after his decision. In this case, he found her incredible and you didn't contest that. So the question is what that means. Does he mean, when he finds her not credible, does that mean he finds that she had no pain or she didn't have enough pain or what? And how does that dovetail with whatever objective evidence there is in the record, either now or later, than suggesting that she wasn't pained? In other words, could you find, based not on anything she said because she was found not credible, but other information that she had? Well, I am suggesting that this surgery, in fact, did that because the surgery occurred a number of years after she applied for benefits and is an explanation. How does it demonstrate, how does a surgery in 2000 demonstrate what her condition was in 1996? Well, because just before the surgery, she had a discogram, a procedure that tries to locate causes of pain in the back. And that was effective in locating specific points at which her pain was caused, and that triggered the decision to have surgery right at that time. But she had to show that she had this condition on a certain day in 1996. Ninety-six. Ninety-seven. That's right. March of 97. That's right. So how does this demonstrate that she had, she was disabled in March of 97? Well, it's related to the surgery, the considerations that were being considered in regards to getting surgery. And on her date last insured in 1997, she was in a body cast. The purpose of the body cast was to test the possible effects of fusion surgery. That was the clear intent of that. She was in a body cast for six weeks. When the body cast was taken off, it was about four weeks after her date last insured. And in the doctor's office where she had her cast taken off, her pain immediately returned when the cast was taken off. So it was clear at that time that fusion surgery was going to be an answer, or at least a very probable good answer to her back, her low back pain, right in 1997. That was determined. Are you telling us that the ALJ was an error based on evidence that was not in the record at the time of the ALJ's decision? Well, the surgery was not in the record, but the body cast, the evidence about being in a body cast was in the record. And the ALJ pretty much is irrelevant to the decision that you're urging us to reverse? Surgery is not irrelevant. Well, but how does it get in the record? If the ALJ didn't know it. It was done about a year after, and it was still on appeal, administrative appeal. And the regs allowed that, right? Yes. And it had this very strange rule about what happens then. Does the appeal body then make the decision? Does it remand? What does it do? Well, the appeals body usually, as it did here, affirmed the ALJ's decision as written and addressed the new evidence. If they had wanted to take the regs allowed them to take it into account. Yes. And they did. They did acknowledge it, and then they put it in the record, and they said it didn't change their decision, or the ALJ's decision. So they considered it. They looked at it. They commented upon it. But didn't work it into the timeline. The point is that it's not that the ALJ necessarily made a mistake, but that the appeals body made a mistake. Right. I'm not saying the ALJ made a mistake on that issue. I'm saying that he didn't see that evidence. I'm saying the ALJ did make a mistake on the body cast issue, though, because he didn't understand the purpose of the body cast at all. And he also made a finding that the body cast cured her back pain after she had it off. He said since her body cast had been on, she had been better. But that was incorrect. So he misperceived the purpose and made a finding not supported by the evidence in regards to what happened. She didn't improve permanently after the body cast had been on. She only improved while the body cast was on. And that body cast was on on the date her insurance expired. But the ALJ says that afterwards she failed to follow through on obtaining care. She does not wear her back brace regularly. And he takes that as evidence that the pain is not debilitating within the meaning of the statute here. Yes. Is that basically a paraphrase? That is correct. And I think there's somewhat of a problem with the record in that after the body cast came off, I think the ALJ kind of had to speculate a little bit about, well, if surgery was indicated by the casting, then why did she go so long without surgery? And I think he started speculating about she wasn't in very bad shape. But there seems to be references in the record to several possible reasons for her not having surgery immediately in 1997, including her getting pregnant, moving to northern California. Dr. Schuer, her treating doctor, changed his mind right after the body cast came off. He said he didn't think surgery would be recommended. And then there's a letter in the record at transcript 422 where a pain center said, we're sorry that this patient fell through the cracks. So it's unclear exactly why the ---- Well, that's a great letter. You know, it would have been easier for us if this full administrative record had been reproduced, because we only have one of them, and it comes to one of the judges and it's the excerpts of record that you reproduced don't contain all the things that you're now referring to. Let me make sure I've got my dates right. On what day does the body cast come off? It came off on, let's see, on ---- About a month after March 31st. March 17, 1997. I mean, that's when it was put on. I'm sorry. It was April 30th. So April 30th. I've got a letter here from a Dr. Miller on May 28th, so about a month after it comes off. Yes. And he's got some functional capacity assessment of lifting and so on. And it doesn't say disability. I understand that your argument is that the ALJ didn't rely on Dr. Miller, even though it's relied on by the government. But falling between the cracks, that letter is March 1st, 2000. I mean, that's a long time afterward. Yes, it is. And ---- There's some evidence in the record that while she was pregnant, she ---- there was a letter from, I think, Dr. Shoyer about ---- I'm sorry? Yes, yes. There was a letter from him indicating that not the body cast, but a brace that she had been fitted with after the cast had been too large or ill-fitted. But there was also some recommendation specific to her pregnancy about something she should wear. I think later on in her pregnancy, after she did get large, he did want to have another brace fitted for her that would be appropriate for her size at that time. So she was in some contact with him during that time. Yes, she was, in some. But she had moved to Northern California and couldn't travel to see him on a regular basis at that point. But when the ALJ said or when the government said that she ---- that for a year she was not treated, is that true? What year are they talking about? I guess that was after the body cast came off and while she was pregnant. But, in fact, she did have some contact with Dr. Shoyer. She had some contact, yes. And he did prescribe something while she was pregnant. He did mention the continuing need for a brace. That's correct. I only have 35 seconds left. I'd like to answer questions and then save some time. Why don't you save the time and we'll give you a chance to respond. Thank you. Good morning, Your Honors. My name is Grace Carter. I'm an assistant regional counsel for the Social Security Administration. I represent the appellee, Joanne Barnhart. The decision of the commissioner is supported by substantial evidence and should not be disturbed. Plaintiffs suggest that the ALJ's RFC is not supported by substantial evidence, and he also suggests that later proffered evidence supports his position that the RFC determination by the ALJ was inaccurate. In fact, the ALJ's determination is accurate. It's based upon the opinion of Dr. Charles Miller, a consultative examiner who examined the complainant. Two problems with that. One is there's no indication it was based on that. I'm sorry, I can't hear you. Are there two problems with that? One is that there's no indication that the ALJ was relying on Dr. Miller, and the second is that he's not a treating physician. Well, there is an indication that the ALJ was relying on Dr. Miller. If you look at the ALJ's decision at page 24 of the transcript, I believe it's page 8 of the excerpts of record, he references Exhibit 9F, which is Dr. Miller's report. I'm on that page. Where on that page is it? Page 24, the last paragraph, the ALJ says that she retains an exertional capacity as set forth in Exhibit 9F, which is Dr. Miller's report. It is true that the ALJ did not reference Dr. Miller by name. However, he adopted in total Dr. Miller's RFC finding. Let's say, when he says, here you have somebody who has been, you know, both before and after treated as if she was in bad pain for back pain by doctors, right? I mean, she was put in a body cast. She was given a brace. She was later, she later had surgery. There seems to be, whether you think her level of pain was enough to be independently disabling or not, she was, the notion that she was in no pain seems to be. Well, and I don't think there's any finding that the ALJ made that would lead to a conclusion that he found that she was in no pain. All right. So this is my question. This is my question as a result. The hypothetical, however, on which he relied, didn't say anything about pain at all. Right? The hypothetical relied on all of these limitations based on pain. For example, her ability to stoop, her ability to bend, her ability to ‑‑ It doesn't say anything about her having any actual pain while she was working. Or while she was, just nothing. It says nothing about, it says that she can't do certain things. It doesn't say why. And it doesn't say anything about pain at all. Right? Well, it certainly, the ALJ certainly didn't find that because of medications or because of side effects from pain medication that she had any further limitations. That is true. Because as the record reflected up until the time of the decision, the claimant's use of pain medication was very sporadic. And generally, which she relied on over-the-counter medications the last year of the determination of the ALJ. Okay. But I guess what I'm asking you is this. You're asking the vocational expert what kind of a job this person can do. And you say nothing about there being any subjective pain perception, when that is not supported by the record. I mean, you seem to agree that that's true. The notion that there was not at least some significant pain is not supported by the record. Well, Your Honor, I guess I disagree with the notion that the ALJs are, I mean, the hypothetical discounts pain. I didn't say a word about it. Which are you referring to? Well, I am laboring under the problem that I do not have the administrative record either. So I'm working off the ALJ's opinion. The ALJ says a hypothetical is propounded to the vocational expert which said how old she was and said that she can lift and carry 10 pounds and so on and so on. And in response to that, she said what she can do, but doesn't, at least from what I can see, and I don't have the hypothetical in front of me, it says nothing about pain. Well, Your Honor, I think that if you had the benefit of the testimony, there I have the testimony. I've read the testimony. I'm asking you what the hypothetical is. The hypothetical was in the testimony of the vocational expert. Right. Right, it was. And I did look at it then. As I said, it's I'm not saying anything about pain is what I'm asking you. I'm reading it. The ALJ certainly does not mention pain as a specific limiting factor in his recounting of the hypothetical. However, I think that the RFC is quite limiting and it takes into account her subjective pain to the extent it was recognized by the ALJ. And the ALJ makes very clear finding as to why he did not find that there was additional limitations that the claimant should be recognized. He gave 20-some-odd reasons to discount her credibility, which, as far as the credibility's findings, at least, indicate that he more than adequately considered the record and considered her claims of pain and other limiting factors. For example, the RFC, as adopted by the ALJ, included a limitation suggested by the claimant herself, and that is that she required a sit-stand option. That was not in the RFC that was propounded by Dr. Miller, and so the ALJ added, considering her subjective testimony, a sit-stand option that would allow and stand at will in the workplace. Furthermore, the claimant, the appellant has suggested that since the ALJ ignored Dr. Miller's report, which I think is shown is not true, that the ALJ would have been required by Dr. Miller's RFC finding to find the claimant disabled. In fact, all the ALJ was required, given the postural limitations that were given by Dr. Miller and the additional limitation which the ALJ adopted, was to require that a vocational expert be used to determine whether or not there were in the economy other jobs that the claimant could perform, given those limitations. The ALJ did that. The vocational expert identified other jobs once it was determined that she could not perform her past relevant work based on those limitations, and she identified other jobs that the claimant could perform, and so that the ALJ satisfied his obligation under the rulings of the Social Security Administration, which would require, where there are these extreme postural limitations, that the ALJ consult a vocational expert. That was done, and the vocational expert's opinion was accepted by the ALJ on both the question of whether or not she could perform her past relevant work and whether or not there was alternative work in the economy which she could perform, given those limitations. On this record, what's the effect of the later back fusion surgery? Well, Your Honor, there are several issues with this later evidence. Plaintiffs suggest that this later evidence points directly back to her condition in March of 1997, which is the only issue here. That is a very narrow time frame from June, I mean, July of 1996 until March of 1997 is the adjudicatory period that the ALJ was considering. Plaintiffs suggest that this evidence points directly back to the March 1997 time period to show that she was disabled as of that date. The Appeals Council, in looking at that evidence post-1997, the ALJ's decision determined that, in fact, that evidence did not reflect on her condition as of March 31st, 1997. You know, this is something I didn't really understand. Both the ALJ and you in your briefs rely on a great deal of evidence from after March 1997. Indeed, the primary evidence he was relying on dealt with her pregnancy and her activities after her pregnancy and her current activities, none of which had to do with March 1997. Well, the ALJ considered the entire record that was before him as of the date of the hearing, and that, of course, if what the fact, the assertive fact that she had no contact with doctors for a year, that began well after March of 1997. Because in March of 1997, we know that she was in close contact with doctors over pain and that she was assigned a body cast and she had a body cast shortly thereafter. So there was a reliance on what happened later, presumably, as throwing some light on what was true earlier. Right. So the question is, why didn't what happened in 2000 also throw some light on the fact of whether she at least had a serious enough back condition that by 2000 she was having surgery for it? Well, Your Honor, there are two issues you raise. The first has to do with the question of whether or not the ALJ was appropriate in his consideration of evidence after March 1997. And clearly, under our regulations, the ALJ considers the entire record that is before him. This ALJ... Well, he certainly had to do that at least to know how far forward it ran. But one possible reading of the record might be that she was disabled for some period, but not for the entire period. Well, and as you know, our regulations require you to have continuous disability, not broken-up periods of disability. What this ALJ found, in fact, was that she had not demonstrated a period of continuous disability meeting our 12-month durational period, recognizing that there were perhaps periods of time when she was on her back, for example, presumably during the time that she was casted. However, her obligation was to show, and continues to be to show, that she was continuously disabled during that time frame. What this new evidence reflects, perhaps more than anything, is that post-1998, because we assume that Dr. Scherer's opinion remains, that is, as late as December, I believe, of 1998, he surmised that surgery was not the proper way to handle Ms. Knauer's back pain. And then we have another... But not that she didn't have the back pain. And neither has the ALJ found that she did not have back pain or a debilitating condition, in that he found that a woman who was only 34 years old was limited to sedentary to light work, which is quite limiting in terms of one's physical capacity for work. So the ALJ has more than accommodated the fact or the factor that dealt with Ms. Knauer's back pain and her back impairment. The simple fact that she has an ALJ, that is, a woman who was only 34 years old, what it has done is limited her ability to work to the degree found by the agency. I think we have the argument in hand. I've got one last. I'm not sure. It's not a question directly related to the merits of this case. This is the first social security case that I remember in which there's not been produced for the entire panel, either the entire or the great bulk of the medical record. Is there a custom in these cases as to who asks that the full record be prepared for the entire panel? Because obviously it's to both sides advantage that we have this easily available. Your Honor, generally the regulation, I mean, the rules of court require that the appellee prepare the excerpts of record. The practice of our office until recently had not been to do supplemental excerpts. We have been doing them lately in light of a change of the rules of court in July, I believe, of 2003, which seemed to us to put a burden on us to supplement the record in other ways. This case, as I recall, was submitted prior to that. I did not prepare supplemental excerpts. This question is not a rebuke. It's just a question. Oh, I understood that. Okay. Thank you. Thank you. Would you like a minute or so in rebuttal? Yes, I would very much. And also I'd like to answer your last question first, which doesn't really go to the merits of the case, but I worked for the Office of Regional Counsel at 1.2 and have since changed sides, so to speak. While I worked there, I never saw any Ninth Circuit briefing submitted with all the medical records. And when I took up the other side, I took up the local practice. That's what I believe it to be, because... I always get it. Judge Fletcher's right. Now, who we get it from, I can't tell you, but this is the first time that I felt I was sort of flying the line. And just to dissuade you from worrying about it, I am planning to change my practice completely. I'm going to start doing that. I've already planned to do that. Not the whole record, though. You don't need to see 500 pages, but... Okay. Okay. And we do have one copy, and we'll make do with one copy, so don't think. Well, this is not a request for this time. Okay. Thank you. If I may just quickly address your question about credibility. I said this already, but I do believe that full consideration of all the evidence would change the credibility finding. In regards to the... Well, that you can't say, because you've given that up. In other words, it seems to me that you can take the position that full consideration of the whole record would support a conclusion, regardless of her credibility. But you can't say that we ought to be reconsidering her credibility. Yes, but, you see, opponents are... Claimants are put in a very delicate situation here, where they don't want to withdraw any claims that they've made. And yet, if the ALJ has made a supportable finding about credibility, where they address the various factors, and it's not challengeable, then it's not as... It's challengeable, because you didn't challenge it. It might have been challengeable originally, but you didn't challenge it. Right. Because I thought, or as in the usual situation, that the appellant can't exactly say you made a terrible finding, because obviously the ALJ did not make a terrible finding that's easily attackable. And yet, obviously, the person is not saying, well, I give up my claims of pain. What he's saying is that disregarding anything she said, you could still find that she was in pain. Yes. Yes. Right. And I don't think the question that she's in pain is in dispute. The question really is the degree of pain. That's true. As to the question about, I know I'm being slightly repetitive, but whether the later surgery affected the earlier findings, I think it affects it clearly because it was fusion surgery on her lower back, and the body cast was on there three and a half years earlier to test the effects of possible fusion surgery. So that's where that direct relation comes in. That's all I have for now. Okay. Thank you very much, both sides. The case of Knoyer v. Barnhart is now submitted for decision, and we are adjourned for the day. We will reconvene tomorrow at 9 o'clock. Thank you. Thank you. Thank you. Thank you.
judges: T.G. Nelson, W. Fletcher, Berzon